## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JUAN HERNANDEZ,**

      Plaintiff,

vs.                          Case No. 4:22cv396-WS-MAF

**THE GEO GROUP, INC.,**
**FLORIDA DEPARTMENT OF**
**CORRECTIONS, CENTURION,**
**LLC, and WELLPATH,**

      Defendants.

_____/

### PLAINTIFF'S RESPONSE TO FLORIDA DEPARTMENT OF CORRECTIONS' MOTION TO DISMISS

Plaintiff, Juan Hernandez, through his counsel, responds to Defendant, Florida Department of Corrections, (ECF No. 25) Motion to Dismiss as follows:

## I.    INTRODUCTION

Defendant's Motion to Dismiss is partially based on caselaw overturned by legislative action. On page 7 of its Motion to Dismiss, Defendant cites to overturned law when it states:

> The United States Supreme Court has stated that "[m]erely having an impairment does not make one disabled for purposes

1

of the ADA." <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 195 (2002) (abrogated on other grounds by ADA Amendments Act of 2008, Pub. L. 110-325).

Based on this law, Defendant argues that "Plaintiff's factual allegations do not demonstrate that he is disabled for purposes of the ADA." <u>Id.</u> However, Congress disagreed with that definition of a "disability." <u>See Hentze v. CSX Transp., Inc.</u>, 477 F. Supp. 3d 644, 660 (S.D. Ohio 2020). So it amended the ADA in 2008 (i.e., the ADAAA). <u>Id.</u>

Indeed, "one of the reasons Congress cited for enacting the ADAAA in 2008 was its belief that <u>Toyota</u>'s reading of 'disability' was inappropriately narrow." <u>Id.</u>, citing ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Consistent with that, in the findings and purposes section of the bill, Congress expressly stated that the enactment was designed to overturn the holdings of cases like <u>Toyota</u>. <u>Id.</u>, citing <u>id.</u> at §§ 2(a)(4)–(5).  Thus, <u>Toyota</u> was overturned due to the legislative action in U.S. Pub.L. 110-325 January 1, 2009.

So, Defendant's Motion to Dismiss is partially based on bad law; its argument that Plaintiff is not disabled as per the ADA thus fails.[1] Likewise,

---

[1] Speculating, Defendant's misunderstanding of the meaning of a disability under the ADA could be why it refused to accommodate Plaintiff –

the other arguments in its Motion to Dismiss should be rejected, as discussed below.

## II.   ARGUMENT AND MEMORANDUM OF LAW

### A.   Plaintiff Stated A Cause Of Action Upon Which Relief Can Be Granted.

#### 1.   Plaintiff Is Disabled For Purposes Of The ADA

For years, Plaintiff suffered from "dizziness, pain, and hearing loss." See Amended Complaint paragraphs 27 and 28; see also paragraphs 31 and 32 (In addition to his hearing loss, he suffered from "head and ear pain, dizziness, ringing in his ears."). Moreover, paragraph 43 states that "Plaintiff has lost over 80 percent of his hearing in his left ear, continues to experience sharp pains between his ear and head injury, has permanent tinnitus, has panic attacks, and because his equilibrium is off as a result of these ailments, he loses his balance easily and often falls."

Defendant's reliance on cases like Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002), is incorrect as a matter of law since the ADAAA (ADA Amendments Act of 2008) was enacted. Following the

---

incorrectly believing he is not covered – as it now argues. Discovery on these and other the other issues raised in Defendant's Motion to Dismiss is thus appropriate.

adoption of the ADAAA, the standard for establishing disability has been significantly relaxed to ensure broad coverage of workers. As amended, the ADA now sets forth rules of construction that must be used when construing and applying the statutory term disability. See 42 U.S.C. § 12102(4). The Act now directs the courts to construe "disability ... in favor of broad coverage of individuals under this chapter", to the maximum extent permitted by the terms of this chapter. Id. Moreover, when determining whether an individual is substantially limited in a major life activity, the courts are directed to assess the limitations that the worker would experience in the absence of mitigating measures and to disregard the ameliorative effects of those mitigating measures, such as "learned behavioral or adaptive neurological modifications." § 12102(4)(E)(iv).

Applying the post-ADAAA standard, federal courts have held that plaintiffs with hearing loss similar to Plaintiff's had produced sufficient evidence of disabilities under 42 U.S.C. § 12102(1)(A). See Brown v. CVS Pharmacy, Inc., 2013 WL 3353323, at *2–3 (M.D. Fla. July 2, 2013)(holding that plaintiff produced sufficient evidence that deafness in her right ear and neuropathic pain in her left ear constituted an actual disability); U.S. Equal Employment Opportunity Comm'n v. Big Lots Stores, Inc., 2:17-CV-73, 2018

WL 4656413, at *3 (N.D.W. Va. Sept. 27, 2018)(a plaintiff's hearing and speech impairments were sufficient to constitute a disability because "[h]earing, speech, and communication are each major life activities in themselves").

Even courts applying the more-stringent pre-ADAAA legal standard for disability have reached this conclusion. See Bosket v. Long Island R.R., 2004 WL 1305746, at *3–5 (E.D. N.Y. June 4, 2004) (denying both parties' motions for summary judgment regarding disability status of plaintiff with unilateral hearing loss because "[f]act-intensive inquiries such as this often require resolution at trial"); Connolly v. Bidermann Indus. U.S.A., Inc., 1998 WL 305643, at *5–6 (S.D. N.Y. June 9, 1998) (denying motions for summary judgment regarding disability of plaintiff with unilateral functional deafness and tinnitus because substantial limitation is issue of fact for trial).

Plaintiff pled more than just the substantial hearing loss in one ear; for years, he from suffered from head and ear pain, dizziness, and ringing in his ears. He continues to experience sharp pains between his ear and head injury, has permanent tinnitus, has panic attacks, and because his equilibrium is off as a result of these ailments, he loses his balance easily and often falls. Thus, Plaintiff has more than adequately pled that he is disabled

per the ADA, as amended, because he has pled much more than hearing loss in one ear.

### 2.   Plaintiff Was Excluded From Participation In Or Denied The Benefits Of The Services, Programs, Or Activities

Defendant's Motion to Dismiss on page 7 faults Plaintiff for allegedly failing to properly plead that he "requested to participate in programs or activities." Citing 42 U.S. Code § 12132. However, Defendant ignores that "[a]ll of Defendant DOC's correctional facilities in which Plaintiff was located including without limitation RMC, Hamilton CI and Columbia CI, comprise a program or service for purposes of Title II of the ADA." See Amended Complaint, paragraph 64. Moreover, Defendant denied Plaintiff accommodations "in the form of hearing devices and medications for his hearing impairment and delayed in providing him a cane." See Amended Complaint paragraph 67, see also paragraph 66. Likewise, Plaintiff suffered from dizziness and falls for more than two to three years before he was given a cane. See Amended Complaint paragraph 40.

As pled in paragraph 42, non-hearing-impaired inmates are selling hearing aids in exchange for commissary, but Plaintiff cannot obtain one of the hearing aids because it would be considered contraband if it was not

prescribed, and he cannot afford it. Thus, Plaintiff "was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity." See Bircoll v. Miami–Dade County, 480 F.3d 1072, 1083 (11th Cir.2007); see also Silva v. Baptist Health S. Florida, Inc., 856 F.3d 824 (11th Cir. 2017) (hospitals' parent organization was proper defendant in hearing-impaired patients' action for discrimination under ADA and Rehabilitation Act based on hospitals' failure to offer appropriate auxiliary aids so patients could effectively communicate with hospital staff, although parent organization was not itself a medical facility); Chisolm v. McManimon, 275 F.3d 315, 327-28 (3rd Cir. 2001) (reversing district court's grant of summary judgment, because plaintiff "presented evidence sufficient to raise genuine issues of material fact regarding the effectiveness of the alternative aids provided by [the prison]"; not addressing deliberate indifference).

Plaintiff also pled that he made demands for accommodations; Defendant even admits that Plaintiff raised the issue regarding its failure to provide a hearing aid when he filed his October 20, 2019, Appeal No. 19-6-39041 to the Secretary of the FDC. See Motion to Dismiss, page 3. Additionally, his Amended Complaint in paragraph 31 details the multiple

sick call requests made regarding his hearing. And paragraph 13 states that "[a]t least four of these grievances addressed the refusal of Defendants DOC and Centurion to provide ADA accommodations including without limitation a cane and hearing aid." Thus, this case is unlike Rylee v. Chapman, 316 F. App'x 901, 906 (11th Cir. 2009), where the police did not know that the plaintiff needed accommodation. Defendant was put on actual notice multiple times; however, even if it was not, Plaintiff's need was obvious.

### 3.    Plaintiffs Need Was Obvious

"It is axiomatic that an 'entity's duty to look into and provide a reasonable accommodation may be triggered when 'the need for accommodation is obvious,' " even if no request has been made. Bax v. Doctors Med. Ctr. of Modesto, Inc., 48 F.4th 1008, 1018 (9th Cir. 2022), citations omitted.  A contrary rule—i.e., one that would permit facilities to fail to provide accommodations to a person with a disability unless she "specifically requests such aid," would be "untenable and cannot be countenanced." Id., citing Pierce v. District of Columbia, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) (Jackson, J.) (rejecting the "suggestion that a prison facility need not act to accommodate an obviously disabled inmate if the inmate

does not ask for accommodations" as "truly baffling as a matter of law and logic").

Individuals "with known communications-related difficulties"—including those related to hearing—may not be able to "communicate a need for accommodations." Id., citations omitted. Thus, a request for accommodation rather "performs a signaling function." Id., citations omitted. It puts the covered entity on notice of the need for an accommodation. Id. But where a disability "is obvious and indisputably known to the provider of services," id., "such a request would be redundant and unnecessary." Id., citations omitted.

Plaintiff could not hear, was in pain for years, and had trouble walking. Defendant's apparent claim that it had no duty to him because he did not check the correct box on some appeal or did not follow some convoluted process to complain is hollow and is simply not plausible. In short, like Pierce, Defendant's position on this is "truly baffling as a matter of law and logic."

### 4.   Plaintiff Suffered Damages

Under federal law, a covered entity must ensure 'to the maximum extent possible' that an individual with a disability receives 'effective

communication' to participate. <u>See</u> 28 C.F.R. §§ 36.303(c)(1), (h).  Thus, both hospitals and other facilities where treatment is provided are subject to the Rehabilitation Act and ADA, and they face specific duties under those statutes. <u>See</u>, e.g., <u>Liese v. Indian River Cty. Hosp. Dist.</u>, 701 F.3d 334, 342-44 (11th Cir. 2012) (concluding that a hospital could violate the Rehabilitation Act by failing to provide appropriate and necessary auxiliary hearing aids to a patient with extensive hearing loss).

Here, Defendant was responsible for supplying Plaintiff's medical services. <u>See</u> Amended Complaint, paragraph 39. By not having a hearing aid that he needed to hear or a cane that he needed to walk, Plaintiff's damages are also obvious. The whole situation is, obvious. <u>See also</u> <u>Robertson v. Las Animas Cnty. Sheriff's Dep't</u>, 500 F.3d 1185, 1197–98 (10th Cir.2007) ("[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation."); <u>Duvall v. Cnty. of Kitsap</u>, 260 F.3d 1124, 1139 (9th Cir.2001) ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious or required by statute or regulation), the public entity is on notice that an

10

accommodation is required....”). As his need for an accommodation was obvious, so was his pain and suffering from not having said accommodations – especially when locked in captivity.

## B.   **Plaintiff Exhausted His Administrative Remedies**

Defendant admits that Plaintiff raised the issue regarding Defendant FDC's failure to provide a hearing aid when he filed his October 20, 2019, Appeal No. 19-6-39041 to the Secretary of the FDC. See Motion to Dismiss, page 3. Moreover, Plaintiff complained numerous other times as detailed in paragraph 31 of his Amended Comꝑlaint. However, Defendant's Motion to Dismiss  claims that Plaintiff was deficient as not complying with "Chapter 33–103.006, Fla. Admin. Code." See Motion to Dismiss, page 3.

However, Defendant failed to prove they made their grievance procedures available and known to persons such as Plaintiff in an understandable fashion. See Adam Slutsky, Totally Exhausted: Why A Strict Interpretation of 42 U.S.C. S 1997e(a) Unduly Burdens Courts and Prisoners, 73 Fordham L. Rev. 2289, 2320 (2005) ("Seven out of ten prisoners perform at the lowest literacy levels. Thus, prisoner suits are considered burdensome because many prisoners lack the basic literacy skills typically present in litigants.", citations omitted). Defendants must prove the existence of an

inmate grievance procedure available to Plaintiff during the relevant time period. See Adlington v. Mosley, 757 So.2d 573 (4ᵗʰ DCA 2000) ("We, therefore, reverse the dismissal order and remand to allow the court to determine whether there was an inmate grievance procedure available to Adlington during the relevant time period.").

Thus, Defendant's citation against Plaintiff for supposedly not complying with "Chapter 33–103.006, Fla. Admin. Code" is unspecific, nonsensical, and unreasonable. Defendant simply did not prove it had a published and readily understandable grievance procedure available to Plaintiff; thus, its Motion to Dismiss should be denied.

### 1.   Plaintiff Exhausted His Remedies With Respect To His ADA Claim

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2012). The Supreme Court has held that failure to exhaust is an affirmative defense under the PLRA, and prisoners are not required to plead or demonstrate exhaustion in their complaints. See Jones v. Bock, 127 S.Ct. 910,

921, 166 L.Ed.2d 798 (2007); see also Bailey v. Fla. Dep't of Corr., 958 So.2d 986, 987 (Fla. 4th DCA 2007) (relying on Bock in a prisoner's section 1983 action to conclude that the failure to exhaust is an affirmative defense to be pled by the defendant, and the prisoner had no obligation to plead exhaustion); Green v. Cottrell, 204 So. 3d 22, 29–30 (Fla. 2016) ("Thus, under the Supreme Court's interpretation of the PLRA, Green was not required to plead exhaustion of administrative remedies at the Santa Rosa County Jail."). Moreover, the fact that a plaintiff may have "pled exhaustion did not place the burden on him to demonstrate that he had actually exhausted whatever administrative remedies had been implemented." Green, 204 So.3d at 30.

As an affirmative defense, Defendants have the burden to prove Plaintiff's claims are barred pursuant to the PLRA. See, e.g., Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1171–72 (N.D. Cal. 2010) ("While neither the Ninth Circuit nor any other Circuit Courts of Appeals has ruled on this issue, the vast majority of courts presented with the issue have extended Twombly's heightened pleading standard to affirmative defenses.") (citing CTF Dev., Inc. v. Penta Hospitality, LLC, 2009 WL 3517617, at *7–8 (N.D. Cal. Oct. 26, 2009) ("Under

the Iqbal standard, the burden is on the defendant to proffer sufficient facts and law to support an affirmative defense"); see also Hayne v. Green Ford Sales, Inc., 263 F.R.D. 647, 650 n.15 (D. Kan. 2009) (citing nine cases applying Twombly and Iqbal to the pleading of affirmative defenses)); see also Miller v. Dep't of Corr., 172 So.3d 574, 574 (Fla. 1st DCA 2015) (reversing dismissal of petition for writ of mandamus where prisoner asserted that "he had 'exhausted all available avenues of administrative review via the inmate grievance procedure,' and ... his exhaustion of administrative remedies [was] reflected in 'inmate appeal grievance log number 13–6–15500' "); Bailey v. Fla. Dep't of Corr., 958 So.2d 986, 987 - 988 (Fla. 4th DCA 2007) (reversing dismissal of complaint where the prisoner alleged that he had "exhausted all administrative remedies"). However, Defendants did not prove their administrative procedures were reasonable, adequately communicated, and always available to Plaintiff.

### 2. Factual Issues Remain as to the Compliance with and Availably of Administrative Remedies

"[I]ssues of fact can arise as to whether there were administrative remedies available to a prisoner, and if so, whether he exhausted them." Green, 204 So. 3d at 30. For example, in Owens v. Crews, 131 So.3d 799, 799–

800 (Fla. 1st DCA 2013), the First District of Florida reversed a circuit court's dismissal for failure to exhaust administrative remedies where "a disputed issue of fact exist[ed] concerning whether Department officials timely provided the responses to [Owens], and the court did not take competent, substantial evidence to reach its determination that the door to review in the circuit court is closed." See also Adlington v. Mosley, 757 So.2d 573, 574 (Fla. 4th DCA 2000) (reversing dismissal for failure to exhaust administrative remedies and remanding for a determination as to whether there was an inmate grievance procedure available to the prisoner, who was housed at a privately run correctional facility); Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004), cert. denied, 73 U.S.L.W. 3513 (U.S. Feb. 28, 2005) (addressing whether plaintiff sufficiently raised the issue of whether administrative exhaustion of remedies was completed due to a lack of response by prison officials and defendant McBride's threat of assault for instituting an action.); Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion."); Johnson v. Testman, 380 F.3d 691, 696-98 (2d Cir. 2004) (remanding to the district court to determine whether "the allegedly confusing nature of N.Y. [Department of

Correctional Services] regulations justified the plaintiff's failure to file a grievance").

Even assuming Defendant proved it had an understandable and advertised grievance procedure, Plaintiff's Amended Complaint recounts in detail Plaintiff's grievances. For example, paragraph 42 states:

> 42. **Plaintiff has exhausted all remedies through the PLRA and has still not received his hearing aid.** At Columbia CI, non-hearing-impaired inmates are selling hearing aids in exchange for commissary but Plaintiff cannot obtain one of the hearing aids because it would be considered contraband if he was not prescribed it and he cannot afford it.

(emphasis supplied). Even more detail in pled in paragraphs nine through fourteen:

> 9. Additionally, during Plaintiff's incarceration in a GEO facility, Graceville CF, from the date of his injury on July 7, 2018, until around August 13, 2018, at least five to seven times, **he attempted to obtain the proper papers/forms to file grievances** under the Prison Litigation Reform Act (PLRA) due to his injury and the failure to provide medical care but he was repeatedly told while he was at Graceville CF by the correctional officers that **they did not have the papers** but would get them for him. They never did. The administrative remedies under the PLRA were thus not available to Plaintiff when he was incarcerated in a GEO facility from July 7, 2018 until around August 13, 2018.
>
> 10. While Plaintiff was housed in a DOC facility, primarily at Hamilton CI, **he filed at least 15 grievances and exhausted his remedies under the PLRA or was thwarted in doing so**. Specifically, he filed grievances in August, 2018, and on October

9, 2018, October 20, 2019, November 15, 2018, September 5, 2019, October 8, 2019, June 1, 2020, February 24, 2021, March 1, 2021, March 15, 2021, March 18, 2021, April 14, 2021 and December 29, 2021. There are at least three other grievances that were denied on September 19, 2019, November 22, 2019 and November 26, 2019 but the dates that the grievances were filed are unknown.

11. Plaintiff, upon information and belief, also **filed other grievances but the dates of those grievances are unknown**.

12. The first grievance that he filed in August 2018, after he arrived at the first DOC facility, was about the injury he received at GEO and the denial of medical care while he was there. **He properly appealed this grievance in accordance with the PLRA.**

13. Almost all of the grievances filed while Plaintiff was at a DOC facility, beginning on or around August 13, 2018, pertained to the denial of medical care while he was in a DOC institution where Centurion was the medical provider. **At least four of these grievances addressed the refusal of Defendants DOC and Centurion to provide ADA accommodations including without limitation a cane and hearing aid.** He filed at least one grievance around August 13, 2018 regarding the incident that occurred on July 7, 2018 and the denial of medical care while he was in the GEO facility.

14. Plaintiff **submitted all of these grievances under the PLRA to the appropriate persons under the PLRA including Wardens and the Secretary of DOC** but for several if not many of these grievances, after submitting his appeal to the Secretary of DOC, he never received a response.

(emphasis supplied). In addition to the detail described above, paragraph 8 of Plaintiff's Amended Complaint states that "All other conditions precedent to filing this action have occurred, if any."

Thus, Plaintiff explained in immersive detail how he either complied with the PLRA or was thwarted; any further detail about these efforts would ironically convert Plaintiff's Amended Complaint into a narrative as opposed to a notice pleading. Thus, Plaintiff has most clearly detailed his either compliance with the PLRA or how such attempts were thwarted or futile. See also Smith v. City of Atl. Beach, No. 3:18-CV-1459-J-34MCR, 2020 WL 708145, at *12 (M.D. Fla. Feb. 12, 2020) ("In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. In addition, all reasonable inferences should be drawn in favor of the plaintiff.", citations omitted).

Finally, this case falls in line with Webb v. Warden, et al, Case No. 4:12cv308-WS-GRJ (Doc 136, pg. 18, July 28, 2016), in which this Court held that the Department of Corrections "evidence- that FDC has no record of Webb's having filed grievances at Taylor C.I.- is insufficient to carry their burden on a motion to dismiss for failure to exhaust." DOC is doing again in this case exactly what this Court rejected in Webb.  Its effort to dismiss the instant case should likewise fail.

### 3.    Again, Plaintiff's Need Was Obvious

As discussed in more detail <u>supra</u>, Plaintiff's need was obvious and Defendant had a duty to look into and provide a reasonable accommodation, even if no request has been made. <u>Bax v. Doctors Med. Ctr. of Modesto, Inc.</u>, 48 F.4th 1008, 1018 (9th Cir. 2022), citations omitted; <u>See also</u> <u>Pierce v. District of Columbia</u>, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) (Jackson, J.) (rejecting the "suggestion that a prison facility need not act to accommodate an obviously disabled inmate if the inmate does not ask for accommodations" as "truly baffling as a matter of law and logic"). Thus, even if Plaintiff's attempts to provide Defendant with notice of his needs were a technically deficient, his need was obvious.

## III.   <u>CONCLUSION</u>

Plaintiff's conditions are covered under the ADA, as amended in 2008. He was denied the ability to use hearing aids and canes and thus denied the services and benefits of the facility that contained him. He complained numerous times, including an appeal, but was either met with confusing rules or intentional bureaucracy designed to thwart those complaints. So, his Amended Complaint should not be dismissed.

Alternatively, should more information be needed, Plaintiff respectfully requests leave to amend to include it. Alternatively, as Defendant has attempted to support its Motion to Dismiss with an affidavit and other documents, Plaintiff respectfully requests the opportunity to conduct limited discovery on those issues and, then, the conversion of Defendant's Motion into a summary judgment motion so he may also file contrary evidence.

## WORD COUNT CERTIFICATION

This document complies with the word limits outlined in N.D. Fla. Local Rule 7.1(F), and contains 4121 words.

Respectfully submitted,


/s/  Marie A. Mattox
Marie A. Mattox [FBN 739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, Florida   32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEY FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing has been served

this 31st day of January, 2023 via eFiling to all parties of record.

<u>/s/  Marie A. Mattox</u>
Marie A. Mattox