**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JUAN HERNANDEZ,**

    **Plaintiff,**

**vs.**                                             **Case No. 4:22cv396-WS-MAF**

**THE GEO GROUP, INC.,
FLORIDA DEPARTMENT OF
CORRECTIONS,
CENTURION, LLC,
and WELLPATH, LLC,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

In November 2022, Defendants GEO Group and the Department of Corrections removed this case from state court.  ECF No. 1.  Plaintiff filed a first amended complaint on December 16, 2022.  ECF No. 17.  The Department of Corrections filed a motion to dismiss on December 29, 2022.  ECF No. 25.  Plaintiff has filed a response in opposition, ECF No. 31, and the motion is ready for a ruling.

**Amended Complaint**

Plaintiff is a state prisoner who was housed at the Graceville Correctional Facility, and then Hamilton Correctional Institution, prior to being transferred to other institutions. ECF No. 17 at 2. Plaintiff alleges that he was unable to exhaust administrative remedies because officers at Graceville never provided him with the necessary forms. *Id.* at 3. However, Plaintiff says that he filed multiple grievances while at Hamilton C.I. *Id.* at 4.

In general, Plaintiff alleges that he was attacked by another inmate and was struck on the back of the head. *Id.* at 5. He was taken to the medical unit at the GEO facility which was operated by Wellpath, and then transported to the emergency room at Jackson Memorial Hospital for treatment. *Id.* Plaintiff contends he continued to experience pain, tinnitus, and hearing loss after returning to the institution, but was not provided appropriate or sufficient medical care. *Id.* at 6-7. The complaint alleges that Plaintiff's medical care was managed by Dr. Alvaraz, and because his decisions were not reviewed, Plaintiff contends that Dr. Alvarez was the "delegated final policymaker for GEO and Wellpath . . . ." *Id.* at 6.

Plaintiff was transferred to the Reception and Medical Center for approximately two weeks before arriving at Hamilton Correctional Institution. ECF No. 17 at 7. While in those prison facilities, Plaintiff's medical care was provided by Defendant Centurion. *Id.* He complained about pain and a "constant ringing sound" in his left ear. *Id.* As his symptoms worsened, he "began losing his hearing in his left ear," as well as his balance. *Id.* at 8. Plaintiff was dizzy, falling down, and had vertigo. *Id.* For three or more years, he sought help and requested a hearing aid and a cane. *Id.* It took nearly two years to receive a cane, but he still did not receive a hearing aid. *Id.*

Plaintiff alleges that medical staff did "not properly assess" his injuries, and their decisions about treatment were not reviewed. *Id.* at 8-9. In other words, Plaintiff contends that the medical decisions of nurses and Dr. Naseri were not subject to meaningful review or supervision; thus, the nurses were the "final policymakers regarding the medical care and treatment that Plaintiff received." *Id.* at 9. Plaintiff made repeated requests for medical assistance but, ultimately, his condition could not be repaired because too much time had passed since the injury. *Id.* at 11.

Plaintiff advises that although he was prescribed a hearing aid, it has not been provided to him. ECF No. 17 at 13. He contends that at Colombia Correctional Institution, "non-hearing impaired inmates are selling hearing aids in exchange for commissary but Plaintiff cannot obtain one of the hearing aids because it would be considered contraband if he was not prescribed it" and, further, he "cannot afford it." *Id.* at 13. Plaintiff states that he has "lost over 80 percent of his hearing in his left ear, continues to experience sharp pains between his ear and head injury, has permanent tinnitus, has panic attacks, and because his equilibrium is off as a result of these ailments, he loses his balance easily and often falls." *Id.*

The amended complaint brings the following claims: (1) Count I is an Eighth Amendment claim against Defendant Centurion; (2) Count II is a negligence claim against Defendant GEO; (3) Count III is an ADA claim against the Department of Corrections; (4) Count IV is an Eighth Amendment claim against Defendant GEO; and (5) Count V is an Eighth Amendment claim against Wellpath. *Id.* at 14-26. As relief, Plaintiff seeks equitable relief, monetary damages, and a permanent injunction. *Id.* at 27.

In response, the Florida Department of Corrections ["DOC] has raised two arguments in the motion to dismiss. ECF No. 25. First, the DOC

contends that Plaintiff has failed to state a claim under the ADA. *Id.* at 6-9. Second, DOC argues that Plaintiff failed to exhaust administrative remedies. *Id.* at 9-12.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

S. Ct. at 1965); see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557). The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not

a jurisdictional matter." Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner, 541 F.3d at 1082 (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[2] The burden of proof for evaluating an exhaustion defense rests with the defendant. Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is

---

[2] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

**Exhaustion**

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  The Court lacks discretion to waive the requirement or provide a continuance of the litigation if a prisoner did not exhaust a claim prior to filing.  Alexander, 159 F.3d at 1325; see also Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court." Jones, 549 U.S. at 204-209, 127 S. Ct. at 914.

A prisoner must also comply with the process set forth and established by the grievance procedures. Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). A prisoner must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218, 127 S. Ct. at 922.

The specific argument raised here by the DOC is that although Plaintiff submitted an appeal to the Secretary's Office concerning the failure to provide him with a hearing aid, Plaintiff did not first submit his grievance at the institutional level. ECF No. 25 at 10. Defendant states that Plaintiff did not file a formal grievance before submitting the grievance appeal and, thus, it was returned without action for failure to comply with the grievance

rules.  *Id.* at 11.  Plaintiff had an opportunity to cure the deficiency, but "failed to do so."  *Id.*

The DOC submitted the declaration of Jacqueline Adams to support its argument that Plaintiff did not exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a).  Adams states that Plaintiff filed an appeal of a grievance[3] concerning the medical treatment he received, but the appeal was returned without action because Plaintiff did not first file a formal grievance at the institutional level, or the reason "provided for by-passing that level of the grievance procedure is not acceptable." [4] *Id.* at 15.

In response, Plaintiff states that beyond submitting the October 2019 grievance appeal, Plaintiff "complained numerous other times as detailed in paragraph 31 of" his amended complaint.  ECF No. 31 at 11.  Further, Plaintiff argues that Defendant has not proved that "they made their grievance procedures available and known to persons such as Plaintiff in an understandable fashion."  *Id.*

---

[3] Plaintiff signed the grievance on October 20, 2019, and it was stamped "received" in the Secretary's Office for reviewing grievance appeals on November 1, 2019.  ECF No. 25 at 17.

[4] Review of Plaintiff's appeal reveals that he never addressed the fact that he was skipping the informal or formal grievance level of the grievance process, and he did not attach a copy of any prior grievances to his appeal.

Case No. 4:22cv396-WS-MAF

The Rules of the DOC - Chapter 33-103 - require inmates to file grievances of incidents "that affect them personally." FLA. ADMIN. CODE R. 33-103.001(4)(d). Inmates are provided training during "Inmate Orientation" and must "sign a statement acknowledging receipt of training on the inmate grievance procedure." FLA. ADMIN. CODE R. 33-103.003(2). In general, the grievance procedure is a 3-step process - inmates must file an informal grievance, followed by a formal grievance, and then an appeal to the Office of the Secretary. FLA. ADMIN. CODE R. 33-103.005 - 33-103.007.

In limited circumstances not relevant here, an inmate may also file a "direct" grievance to the Secretary in certain "emergency" situations, reprisals, and other instances as specified. FLA. ADMIN. CODE R. 33-103.007(3). However, an "inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility, except in the case of a HIPAA violation grievance which must be filed directly with the Office of the Secretary." FLA. ADMIN. CODE R. 33-103.007(3)(a)2.

Plaintiff's amended complaint alleged that Plaintiff had "submitted in excess of thirty inmate and sick call requests . . . ." ECF No. 17 at 9, ¶ 31. The Rules provide that inmates receive training in the grievance process, and Plaintiff's amended complaint reveals that he knew how to access the grievance procedures since he filed multiple grievances. Even when his attempted grievance appeal was rejected, the reason for the rejection was explained. ECF No. 25 at 19. Plaintiff was given 15 additional days to resubmit his grievance, but he did not do so. *Id.* There is no evidence to suggest that Plaintiff was unaware of how to file grievances. His own allegations demonstrate that he filed multiple grievances. Instead, the DOC's evidence shows that Plaintiff's grievance appeal was not submitted in accordance with the grievance process rules and, therefore, Plaintiff did not properly exhaust his administrative remedies. The motion to dismiss should be granted.

Because it is concluded that Plaintiff did not comply with grievance procedures, there is no need to consider the DOC's argument that Plaintiff failed to state an ADA claim.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion to dismiss filed by the Florida Department of Corrections, ECF No. 25, be **GRANTED**. Plaintiff's amended complaint, ECF No. 17, should be **DISMISSED** as to that Defendant for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e).

**IN CHAMBERS** at Tallahassee, Florida, on August 21, 2023.

S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No. 4:22cv396-WS-MAF