# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**JUAN HERNANDEZ,**

    **Plaintiff,**

**vs.**                                                          **Case No. 4:22cv396-WS-MAF**

**THE GEO GROUP, INC.,**
**FLORIDA DEPARTMENT OF**
**CORRECTIONS,**
**CENTURION, LLC,**
**and WELLPATH, LLC,**

    **Defendants.**
**_____/**

## SECOND REPORT AND RECOMMENDATION

In November 2022, Defendants GEO Group and the Florida Department of Corrections removed this case from state court. ECF No. 1. Plaintiff filed a first amended complaint on December 16, 2022. ECF No. 17. Defendant Wellpath, LLC, [hereinafter "Wellpath"] filed a motion to dismiss on February 13, 2023. ECF No. 38. Plaintiff has filed a response in opposition, ECF No. 44, and the motion is ready for a ruling.

**Amended Complaint**

Plaintiff is a state prisoner who was housed at the Graceville Correctional Facility, and then Hamilton Correctional Institution, prior to being transferred to other institutions.  ECF No. 17 at 2.  Plaintiff alleges that he was unable to exhaust administrative remedies because officers at Graceville never provided him with the necessary forms.  *Id.* at 3.  However, Plaintiff says that he filed multiple grievances while at Hamilton C.I.  *Id.* at 4.

On July 7, 2018, while incarcerated at Graceville Correctional Facility, Plaintiff was attacked by another inmate who struck him on the back of his head.  *Id.* at 3, 5.  Plaintiff contends that he was injured "because GEO failed to protect" him by "not effectively conducting inmate pat downs to search inmates for contraband brought inside the prison after being outside the prison at Graceville CF."  *Id.* at 5.

Plaintiff was taken to the medical unit at Graceville, which is a GEO facility.  *Id.*  The medical unit was operated by Wellpath.  *Id.*  After examination by a nurse, Plaintiff was transported to the emergency room at Jackson Memorial Hospital for treatment.  *Id.*  Plaintiff contends he continued to experience pain, tinnitus, and hearing loss after returning to

the institution, but was not provided appropriate or sufficient medical care. *Id.* at 6-7. Plaintiff alleged that Dr. Alvarez told him his "ear was just clogged with dry blood and it was 'nothing serious.'" *Id.* Beyond giving Plaintiff nasal spray, Plaintiff alleged that no other care was provided, including pain medication, even though Plaintiff suffered "daily from severe pain and hearing loss in his left ear." *Id.*

Plaintiff's medical care was managed by Dr. Alvaraz, and because his decisions were unreviewed, Plaintiff contends that Dr. Alvarez was the "delegated final policymaker for GEO and Wellpath regarding the care and treatment that Plaintiff received at Graceville CF . . . ." *Id.* at 6. Dr. Alvarez did not refer Plaintiff to a specialist but advised him that he would have a follow up in one month. *Id.* The complaint suggests that Plaintiff was not given follow up care. *Id.*

Plaintiff was transferred to the Reception and Medical Center [RMC] on August 13, 2018. ECF No. 17 at 7. He remained there for approximately two weeks before being transferred to Hamilton Correctional Institution on or about August 24, 2018. ECF No. 17 at 7. Thereafter, Plaintiff's medical care was managed by the Department of Corrections and Centurion. *Id.* As the remainder of Plaintiff's allegations do not pertain

to Wellpath, they have not been included. What is worthy of note is that Plaintiff was eventually evaluated by Dr. Naseri in October 2019. ECF No. 17 at 11. The complaint indicates that Dr. Naseri determined that Plaintiff lost the hearing in his left ear because of a lack of medical care. *Id.* at 11-12. Had surgery been performed after his injury, "Plaintiff's hearing may have been restored/ saved . . . ." *Id.* at 12.

The amended complaint brings the following claims: (1) Count I is an Eighth Amendment claim against Defendant Centurion; (2) Count II is a negligence claim against Defendant GEO; (3) Count III is an ADA claim against the Department of Corrections; (4) Count IV is an Eighth Amendment claim against Defendant GEO; and (5) Count V is an Eighth Amendment claim against Wellpath. *Id.* at 14-26. As relief, Plaintiff seeks equitable relief, monetary damages, and a permanent injunction. *Id.* at 27.

In response, Wellpath has raised three arguments in support of its' motion to dismiss. ECF No. 38. Wellpath contends that Plaintiff has failed to state a claim under § 1983, that this case is a matter of medical judgment and is not deliberate indifference, and that Plaintiff failed to exhaust his administrative remedies. *Id.*

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965); *see also* Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557). The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner, 541 F.3d at 1082 (citation

omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing to Bryant, 530 F.3d at 1373-74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[2] The burden of proof for evaluating an exhaustion defense rests with the defendant. Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

---

[2] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

Case No. 4:22cv396-WS-MAF

**Exhaustion**

Wellpath's third basis for dismissal has been considered first since success on this issue will obviate the need to review the merits - whether or not a sufficient claim has been alleged.  Wellpath merely incorporated the arguments raised by the GEO Group's motion to dismiss concerning exhaustion.  ECF No. 38 at 18 (citing to ECF Nos. 35-36).[3]  Wellpath raised no separate, or explicit, argument as to whether Plaintiff exhausted administrative remedies.

Notably, the GEO Group accepted "Plaintiff's allegations as true that grievance forms were not available to him at the Graceville Correctional Facility,[4] but that the grievance process became available to him following his transfer out of the facility on August 13, 2020."  ECF No. 36 at 12.  The GEO Group advised that Plaintiff filed a direct formal grievance about his "medical" issues "on October 6, 2018, and exhausted that grievance

---

[3] Plaintiff raised two claims against the GEO Group, one based on negligence in failing to protect Plaintiff from assault and the second was for deliberate indifference under § 1983.  The GEO Group concedes that Plaintiff exhausted administrative remedies concerning his "numerous medical and disciplinary issues," but argues he did not exhaust administrative remedies concerning the alleged negligent failure to protect him from attack.  ECF No. 36 at 4.

[4] Plaintiff also provided sworn testimony to show that officers did not provide him with the necessary forms to file a grievance between July 7, 2018, and August 13, 2018. ECF No. 43-1 at 6-7.

Case No. 4:22cv396-WS-MAF

through final appeal." *Id.* at 13. The GEO Group further acknowledged that Plaintiff's grievance "mentioned the July 6, 2018, attack by way of background as the source of his injury and need for treatment," but the grievance only "complained of deficient medical care and did not raise issues regarding allegations [of] negligent security/failure to protect." ECF No. 36 at 13.

That argument makes sense as it pertains to the GEO Group; it supports dismissal of one of the two claims brought against it. Wellpath's adoption of the argument does not make sense because, in essence, Wellpath has conceded that Plaintiff exhausted administrative remedies concerning his medical claim. In response to the GEO Group's motion to dismiss, Plaintiff submitted his sworn statement which confirms that he filed a grievance about the lack of medical care he received, and then he "properly appealed that grievance in accordance with the PLRA." ECF No. 43-1 at 11-12.

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998). The Court lacks discretion to waive the requirement or provide a continuance of the litigation if a prisoner did not exhaust a claim prior to filing. Alexander, 159 F.3d at 1325; see also Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones, 549 U.S. at 204-209, 127 S. Ct. at 914.

Here, Plaintiff gave prison officials such an opportunity. Defendants GEO Group and Wellpath have implicitly acknowledged that Plaintiff exhausted administrative remedies concerning his medical issues. *See* ECF No. 36 at 4 (cited in ECF No. 38 at 18). Wellpath made a conclusory assertion that "Plaintiff has failed to exhaust his administrative remedies," but cited to no specific fact to support that argument. ECF No. 38 at 18.

Because it is undisputed that Plaintiff filed a grievance and then an appeal, it is concluded that Plaintiff exhausted available administrative remedies as required by 42 U.S.C. § 1997e(a) and that argument is rejected.

**Failure to State a Claim**

Wellpath argues that "Count V should be dismissed because it fails to state a § 1983 claim against Wellpath upon which relief can be granted." ECF No. 38 at 6. Wellpath contends that Plaintiff is seeking "to hold Wellpath vicariously liable for the alleged negligence of unnamed 'providers' and Dr. Alvarez" in particular for "allegedly failing to provide adequate medical care and treatment to Plaintiff following his alleged attack." Id.

The Eighth Amendment of the United States Constitution requires that prisoners be provided treatment for their serious medical needs. Failing to provide treatment because a defendant is "deliberately indifferent" to a prisoner's plight results in cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). To allege an Eighth Amendment claim for the denial of medical care, a Plaintiff must allege: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need,

and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

First, Plaintiff has alleged that he had a serious medical need. Such a need is defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). Wellpath does not argue that Plaintiff did not have a serious medical need and, moreover, the amended complaint alleged that when the nurse on duty at the institution saw Plaintiff, the nurse "immediately" recommended Plaintiff be taken to the emergency room at Jackson Memorial Hospital. ECF No. 17 at 5. It is accepted that Plaintiff sufficiently alleged a serious medical need.

After showing that he has a serious medical need, Plaintiff "must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott

v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).  Medical malpractice does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)).  In Estelle, the prisoner received treatment for his back injury (bed rest, muscle relaxants and pain relievers), but complained that more should have been done in the way of diagnosis.  The Court rejected that as a basis for liability:

> But the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.

Another principal is also relevant to Plaintiff's claim against Wellpath.  The law is well established that a healthcare provider's liability cannot be based on "a theory of respondeat superior or vicarious liability alone."  Est. of Hand by & through Hand v. Fla. Dep't of Corr., No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (citing Hartley ex rel. Hartley v.

Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  As a private entity, Wellpath may be held liable under 42 U.S.C. § 1983 "only under certain circumstances."  Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (cited in Hand, 2023 WL 119426, at *6).  Such circumstances exist when the entity is alleged to have caused the violation of Plaintiff's constitutional rights.  Hand, 2023 WL 119426, at *6 (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978)).  "In sum, § 1983 liability against [Wellpath] must be conditioned on the existence of an official policy or custom that constitutes deliberate indifference."  2023 WL 119426, at *6 (citing to Buckner v. Toro, 116 F.3d 450, 453 (11th Cir. 1997) ("[T]he Monell policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates.").

    Here, Plaintiff points to no custom or policy of Wellpath, much less one that amounted to deliberate indifference.  While Plaintiff alleged that Dr. Alvarez was the final policymaker for Wellpath because his decisions were unreviewed, Plaintiff has not identified any policy which he created.  Instead, Plaintiff alleged only that he was seen by Dr. Jorge Alvarez on July

23, 2018. ECF No. 17 at 6. Dr. Alvarez told Plaintiff "his left ear was just clogged with dry blood and it was 'nothing serious.'" *Id.* He provided Plaintiff with a nasal spray, but did not conduct further testing as to the reason for Plaintiff's pain and hearing loss. *Id.* He also did not refer Plaintiff to a specialist, but indicated Plaintiff would have a follow-up appointment in a month.[5] *Id.* at 6-7. There are no allegations presented which show that Plaintiff saw Dr. Alvarez again after the July 23rd examination. Plaintiff made a conclusory assertion that Plaintiff's condition "was ignored" by Wellpath. ECF No. 17 at 12. However, Plaintiff does not allege that he submitted sick call requests for additional treatment prior to his transfer away from Graceville that were ignored.

More importantly, Plaintiff has not alleged the existence of a custom or policy of Wellpath. That omission is fatal to Plaintiff's claim because Wellpath may only be held liable for a custom or policy that shows deliberate indifference. Hand, 2023 WL 119426, at *6. There must be "a persistent and wide-spread practice" rather than "random acts or isolated incidents" to establish a custom or policy. 2023 WL 119426, at *6. Here,

---

[5] Plaintiff was injured on July 7, 2018, but did not see Dr. Alvarez until July 23, 2018. ECF No. 17 at 5-6. He was transferred away from Graceville and Dr. Alvarez's care less than a month later, on August 13, 2018. *Id.* at 7.

Case No. 4:22cv396-WS-MAF

no allegations are presented to show that Wellpath, through Dr. Alvarez, had a custom or policy that was implicated.  Furthermore, there are no allegations which show the necessary causation link between the policy and Plaintiff's constitutional violation.  Instead, the Court agrees with Wellpath - that Plaintiff's claim is based on the care rendered to Plaintiff by Dr. Alvarez.  Because Wellpath cannot be held liable under a theory of respondeat superior, the motion to dismiss should be granted as to Count V of the amended complaint.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendant Wellpath, ECF No. 38, be **GRANTED**.  Count I of Plaintiff's amended complaint, ECF No. 17, should be **DISMISSED** as to Defendant Wellpath because the amended complaint fails to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on August 28, 2023.

 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 4:22cv396-WS-MAF

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.