# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**JUAN HERNANDEZ,**

     **Plaintiff,**

**vs.**                                                                 **Case No. 4:22cv396-WS-MAF**

**THE GEO GROUP, INC.,**
**FLORIDA DEPARTMENT OF**
**CORRECTIONS,**
**CENTURION, LLC,**
**and WELLPATH, LLC,**

     **Defendants.**
_____/

## THIRD REPORT AND RECOMMENDATION

In November 2022, Defendants GEO Group, Inc., [hereinafter "GEO"] and the Florida Department of Corrections removed this case from state court.  ECF No. 1.  On December 16, 2022, Plaintiff filed a first amended complaint.  ECF No. 17.  Thereafter, Defendant GEO filed a motion to dismiss on February 3, 2023.  ECF No. 36.  Plaintiff has filed a response in opposition, ECF No. 43, and the motion is ready for a ruling.

**Amended Complaint**

Plaintiff is a state prisoner who was housed at the Graceville Correctional Facility, and then Hamilton Correctional Institution, prior to being transferred to other institutions.  ECF No. 17 at 2.  GEO operated the Graceville facility pursuant to a contract with the Florida Department of Corrections.  *Id.*

While housed at Graceville, Plaintiff alleged that he was unable to exhaust administrative remedies because officers at Graceville never provided him with the necessary forms.  *Id.* at 3.  Plaintiff said that between July 7, 2018, and August 13, 2018, he "attempted to obtain the proper papers/forms to file grievances . . . but he was repeatedly told" by officers that "they did not have the papers but would get them for him."  *Id.*  "They never did."  *Id.*  After being transferred to Hamilton C.I., Plaintiff alleged that he was able to file at least 15 grievances "and exhausted his administrative remedies under the PLRA or was thwarted in doing so."  *Id.* at 4.

On July 7, 2018, while incarcerated at Graceville Correctional Facility, Plaintiff was attacked by another inmate who struck him from behind on the back of his head.  *Id.* at 3, 5.  Plaintiff began bleeding profusely and "was so disoriented from the blow that he had to be wheeled to the medical unit

for treatment." *Id.* at 5.  Plaintiff contends that he was injured "because GEO failed to protect" him by "not effectively conducting inmate pat downs to search inmates for contraband brought inside the prison after being outside the prison at Graceville CF." *Id.*

After arriving at Graceville's medical unit, Plaintiff was examined by a nurse, and then transported to the emergency room at Jackson Memorial Hospital for treatment.  *Id.*  Plaintiff had an MRI, 17 staples to close the head wound, and was returned to Graceville.  *Id.* at 6.  He spent the night in the medical unit, and was sent to confinement the next day.  *Id.*

Eleven days later, Plaintiff submitted a sick call request because of continuing problems with his wound and left ear.  ECF No. 17 at 6.  Plaintiff said he had significant pain in his left ear, with hearing loss.  *Id.*  Plaintiff was examined by Dr. Alvarez who told him his "ear was just clogged with dry blood and it was 'nothing serious.'"  *Id.*  Beyond giving Plaintiff nasal spray, Plaintiff alleged that no other care was provided, including pain medication, even though Plaintiff suffered "daily from severe pain and hearing loss in his left ear."  *Id.* at 6-7.  Because Dr. Alvarez' decisions were unreviewed, Plaintiff contends that he was the "delegated final policymaker for GEO and Wellpath regarding the care and treatment that

Plaintiff received at Graceville CF . . . ."  *Id.* at 6.  Dr. Alvarez did not refer

Plaintiff to a specialist but advised him that he would have a follow up in

one month.  *Id.*  The complaint suggests that Plaintiff was not given follow

up care.  *Id.*

Plaintiff was transferred to the Reception and Medical Center [RMC]

on August 13, 2018.  ECF No. 17 at 7.  He remained there for

approximately two weeks before being transferred to Hamilton Correctional

Institution on or about August 24, 2018.  ECF No. 17 at 7.  Thereafter,

Plaintiff's medical care was managed by the Department of Corrections

and Centurion.  *Id.*  As the remainder of Plaintiff's allegations do not pertain

to his claim against GEO, they have not been included.  What is worthy of

note is that Plaintiff was eventually evaluated by Dr. Naseri in October

2019.  *Id.* at 11.  Dr. Naseri determined that Plaintiff lost hearing in his left

ear because of a lack of medical care.  *Id.* at 11-12.  Had surgery been

performed after his injury, "Plaintiff's hearing may have been restored/

saved . . . ."  *Id.* at 12.

The amended complaint raises a total of five claims, two of which are

asserted against GEO: (1) Count I is an Eighth Amendment claim against

Defendant Centurion; (2) Count II is a common law negligence claim

against Defendant GEO; (3) Count III is an ADA claim against the
Department of Corrections; (4) Count IV is an Eighth Amendment claim
against Defendant GEO;[1] and (5) Count V is an Eighth Amendment claim
against Wellpath.  *Id.* at 14-26.  As relief, Plaintiff seeks equitable relief,
monetary damages, and a permanent injunction.  *Id.* at 27.

## Motion to Dismiss

GEO's motion to dismiss argues that even if Plaintiff was unable to
file grievances while housed at Graceville, he was required to file an "out-
of-time" grievance once the obstruction was removed that prevented timely
filing.  ECF No. 36 at 3.  Because Plaintiff was transferred away from
Graceville on August 13, 2018, GEO contends he must have filed
grievances within 20 days of leaving Graceville.  *Id.*  GEO says that Plaintiff
"did not file any grievances in the allowable timeframe" and never
complained about negligent security in conducting searches or the failure

---

[1] The negligence claim asserts that GEO had a "duty to ensure that contraband
was not brought into its facilities" and "failed to conduct a proper search of inmates who
beat Plaintiff with contraband."  ECF No. 17 at 16.  The amended complaint also asserts
that GEO "breached its duty to properly supervise inmates under its care to prevent
harm to other inmates . . . ."  *Id.*  The Constitutional claims brought in Count IV overlap
with the state law negligence claim.  Plaintiff alleges that GEO "had a duty under the
Fourteenth and Eighth Amendments not to be deliberately indifferent to Plaintiff's health
and safety by protecting him from other inmates . . . ."  ECF No. 17 at 21.  Plaintiff
alleges that GEO was aware of the risk "of harm to Plaintiff if inmates were not
searched properly and thoroughly . . . ."  *Id.*

to protect him.  *Id.* at 4.  Thus, GEO argues that Plaintiff's claims should be dismissed.  *Id.* at 13-14.

In response, Plaintiff challenges the "chain of custody" of Plaintiff's grievances, and questions how "Defendant can prove there are no other grievances" submitted by Plaintiff which were not included in Defendant's Exhibit A.  ECF No. 43 at 4.  Plaintiff argues that Defendant GEO's motion is insufficient because it does not include "the source for the documents that" comprise the Exhibit, does not state "what Defendant's actual procedures were," and he questions the reliability of "Defendants self-serving and general assertion that Plaintiff's efforts were not thwarted."  *Id.* at 4-5.  Thus, Plaintiff contends that Defendant GEO has "failed to carry its burden to prove the" affirmative defense of exhaustion.  *Id.* at 6.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. at 1965); <i>see also</i> <u>Wilborn v. Jones</u>, 761 F. App'x 908, 910 (11th Cir. 2019).  "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Iqbal</u>, 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S. at 556).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility."  <u>Iqbal</u>, 129 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S. at 557).  The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  <u>Swierkiewicz v.</u>

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, <u>Oladeinde v. City of Birmingham</u>, 963 F.2d 1481, 1485 (11th Cir. 1992), <i>cert. denied</i>, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  <u>Twombly</u>, 127 S. Ct. at 1965, (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner, 541 F.3d at 1082 (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then

proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[3]  The burden of proof for evaluating an exhaustion defense rests with the defendant.  Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

## Exhaustion

GEO raises a single argument as to exhaustion - that after Plaintiff was transferred away from Graceville, he did not exhaust his administrative remedies concerning his claims about security and failing to protect him. ECF No. 36 at 12-14.[4]  GEO accepted "Plaintiff's allegations as true that grievance forms were not available to him at the Graceville Correctional

---

[3] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

[4] GEO concedes that Plaintiff exhausted administrative remedies concerning his medical issues, but not the basis for his claims against GEO. See ECF No. 36 at 4.

Facility,[5] but that the grievance process became available to him following

his transfer out of the facility on August 13, 2020."  ECF No. 36 at 12.

Plaintiff's response to the motion suggests that GEO has challenged "that

Plaintiff's efforts were not thwarted."  ECF No. 43 at 5.  That is not

accurate, however, as GEO stated unequivocally that it accepted that

Plaintiff was unable to submit grievances while at Graceville.  The issue is

whether Plaintiff should have exhausted administrative remedies after he

was transferred away from Gracevile, and then whether he did in fact do

so.

When the Prison Litigation Reform Act was enacted, Congress

mandated that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory.

Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  The Court

lacks discretion to waive the requirement or provide a continuance of the

_____

[5] Plaintiff also provided sworn testimony to show that officers did not provide him
with the necessary forms to file a grievance between July 7, 2018, and August 13, 2018.
ECF No. 43-1 at 6-7.

litigation if a prisoner did not exhaust a claim prior to filing.  Alexander, 159 F.3d at 1325; see also Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones, 549 U.S. at 204-209, 127 S. Ct. at 914.

A prisoner must comply with the process set forth and established by the State's grievance procedures.  *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  Thus, § 1997e(a) of the PLRA requires "proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910 (2007) (quoted in Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1217-18 (11th Cir. 2010)).  Thus, a

prisoner must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218, 127 S. Ct. at 922.

The Court must determine whether or not Plaintiff was required to file an out-of-time grievance once he was transferred to decide if he exhausted administrative remedies. GEO contends Plaintiff must do so pursuant to Rule 33-103.011(1)(a) and Rule 33-103.011(2). ECF No. 36 at 12. GEO asserts that courts "courts have repeatedly confirmed that inmates fail to exhaust their administrative remedies if they do not file an out-of-time grievance under Rule 33-103.011(2) after an alleged obstruction is removed." ECF No. 36 at 11-12 (citing numerous cases). Those cases have been reviewed.

First, in Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999), the Georgia prisoner filed a grievance, but it was denied as untimely. The prisoner could appeal that denial, but argued that his "appeal would not be heard (because his grievance was untimely)." Harper, 179 F.3d at 1312. The prisoner argued that he had exhausted, but the Eleventh Circuit disagreed, noting that the grievance coordinator was allowed "to waive the time period for filing a grievance if 'good cause' is shown." 179 F.3d at

1312.  Since the prisoner did not seek leave to file an out-of-time grievance, the court held that he could not be considered to have exhausted his administrative remedies because such a ruling would permit an inmate to "ignore the PLRA's exhaustion requirement and still gain access to federal court merely by filing an untimely grievance."  *Id.*  Harper stands more for the proposition that an inmate must comply with the prison's rules and time limits for filing grievances than a requirement to request permission to file an out-of-time grievance when the inmate has been precluded from filing a timely one.

GEO also cites to Filmore v. Cooper, 2020 WL 1275385, at *6 (M.D. Fla. Mar. 17, 2020), pointing to this language: "Assuming for the sake of argument no formal grievance forms were available when Plaintiff requested them, Plaintiff fails to show he attempted to file a formal grievance once the forms became available [under Rule 33-103.011(2)]." ECF No. 36 at 11.  In Filmore, the Plaintiff filed an informal grievance but conceded he did not proceed to the second step of the grievance process. 2020 WL 1275385, at *5.  The Middle District of Florida rejected the prisoner's arguments that exhaustion was not mandatory and that he did not need to exhaust because the grievance system could not give him what

he wanted - money and termination of employees. *Id.* However, the court considered his contention that "the grievance process was unavailable to him because when he requested formal grievance forms, 'employees' told him there were none." 2020 WL 1275385, at *5. The court found that contention to be "not credible." *Id.* at *6 (stating "Plaintiff's self-serving, conclusory assertion is insufficient to show the grievance process was unavailable to him").

More importantly, the court noted that the rules permit a prisoner to seek an extension of the time to file a grievance and concluded that "Plaintiff should have followed administrative procedures to obtain an extension of the filing period." 2020 WL 1275385, at *6. Plaintiff provided "no evidence he did so" and the court concluded he did not exhaust administrative remedies. *Id.* Thus, Filmore v. Cooper can be said to stand for the proposition that if an administrative remedy is available, it must be pursued. Sanders v. Walker, 3:19-CV-1029-J-39MCR, 2020 WL 5255116, at *3 (M.D. Fla. Sept. 3, 2020), is on equal footing,[6] as is Roca-Moreno v. Desouza, 2020 WL 7774726, at *4 (S.D. Fla. Nov. 12, 2020) ("A prisoner

---

[6] The court similarly held that "[i]f Plaintiff was denied the form he needed to comply with the rules, he could have sought an extension until such time as he was able to obtain that form. He did not do so." Sanders, 2020 WL 5255116, at *3.

who has not sought to file an out-of-time grievance cannot be considered to have exhausted his administrative remedies"), and Berger v. Godwin, No. 3:21-CV-97-MMH-JBT, 2022 WL 797401, at *11 (M.D. Fla. Mar. 16, 2022), appeal dismissed, No. 22-11305-F, 2022 WL 2821503 (11th Cir. June 17, 2022) (explaining that Berger "could have filed a grievance when he transferred to Santa Rosa CI less than a month after the incident").  GEO's other case, Stephens v. Corizon, LLC, 2021 WL 2981317, at *9 (M.D. Fla. July 14, 2021), stands only for the unremarkable proposition that submitting an "untimely grievance does not satisfy the exhaustion requirement of the PLRA."  Stephens, 2021 WL 2981317, at *7 (M.D. Fla. July 14, 2021), *appeal dismissed sub nom.* Stephens v. Centurion of Fla., LLC, No. 22-10063-G, 2022 WL 2658902 (11th Cir. Mar. 10, 2022) (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)).

Importantly, the statute states that a prisoner cannot file a civil action "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Courts need not review the effectiveness of an administrative remedy, "but rather focus solely on whether an administrative remedy program is 'available' in the prison involved."  Alexander, 159 F.3d at 1326.

Plaintiff argues that the submission of an out-of-time grievance "is illusory" and "beyond unreasonable."  ECF No. 43 at 8.  Plaintiff contends that the Department's rule for submitting such a grievance "only applies when the [prison] unilaterally decides it applies . . . ."  *Id.*  Thus, even if Plaintiff knew about the rule, Plaintiff argues that it is a dead-end because prison officials have unilateral control over "good cause."  *Id.* at 8-9.

Plaintiff is deemed to have knowledge of the rule and the availability of filing out-of-time grievances for two reasons.  First, inmates "receive training in the use of the inmate grievance procedure by institution or facility staff."  FLA. ADMIN. CODE R. 33-103.003(2).  Inmates sign a form which acknowledges "training on the inmate grievance procedure" and the statement is placed in the inmate's file.  *Id.*  The Court will presume the Department complied with its own rules.

Second, review of Plaintiff's grievances reveal that Plaintiff was aware of the ability to file a grievance out of time.  GEO submitted a composite exhibit with copies of all grievances and appeals filed by Plaintiff between July 6, 2018, and December 31, 2019.  ECF No. 40, Ex. A.[7]  That exhibit reveal that Plaintiff submitted a grievance on July 30, 2019, about

---

[7] The exhibit was filed under seal.  ECF Nos. 35, 39, and 40.

Case No. 4:22cv396-WS-MAF

an incident that occurred on May 16, 2019.  *Id.* at 36.  Plaintiff said he was

filing the informal grievance "pursuant to CH-33-103.005, F.A.C. and in

good faith."  *Id.*  That language reveals that Plaintiff is aware of the need to

show "good faith" in submitting an out-of-time grievance.[8]  *Id.*

Indeed, Plaintiff did so a second time on August 4, 2019, complaining

about a missing razor from over a month ago.  *Id.* at 40.  Plaintiff again said

he was filing the "informal grievance" in "good faith pursuant to CH-33

F.A.C."  *Id.*  Plaintiff submitted a third, similar "formal grievance" on August

30, 2019, again stating it was submitted "in good faith" about being hit with

a blunt object on July 7, 2018, and being in "constant pain."  *Id.* at 42.  That

grievance was accepted out of time, but denied.  *Id.* at 43.

The rules of the Department of Corrections permit inmates to file

grievances out of time.  ECF No. 36 at 10.  In normal circumstances, the

Department's rules require that an informal grievance "[m]ust be received

within 20 days of when the incident or action being grieved occurred unless

the inmate has requested in writing and received approval for a 45 day

extension to file an informal grievance . . . ."  FLA. ADMIN. CODE R. 33-

---

[8] Even so, Plaintiff's grievance was returned without action because it was more than 20 days from the time the event occurred.  ECF No. 40, Ex. A at 36.

103.011(1)(a).  Grievance Appeals to the Office of the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate."  FLA. ADMIN. CODE R. 33-103.011(1)(c).  Importantly, the Rules state that "[a]n extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . that it was not feasible to file the grievance within the relevant time periods and that the inmate made a *good faith* effort to file in a timely manner."  FLA. ADMIN. CODE R. 33-103.011(2) (emphasis added).  Out of time grievances are possible and available to inmates.

A leading case in the Eleventh Circuit on exhaustion is Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008).  Bryant controls this issue.

The Bryant court considered whether a prisoner exhausted his administrative remedies when he properly filed a grievance, but "failed to file a timely appeal."  Bryant, 530 F.3d at 1378.  Because the prison's administrative process permitted waiving the time limits "for good cause," and because Bryant did not seek a waiver, the court concluded that "he did not fully exhaust the administrative remedies available to him."  *Id.* at 1378-79.

Moreover, Bryant argued that remedies were unavailable to him because of threats of reprisals.  *Id.* at 1379.  The court rejected that argument, finding that "Bryant was later transferred to another prison where the threat of violence was removed."  *Id.*  "There, he could have filed an out-of-time grievance and then shown good cause for its untimeliness. Because he did not, Bryant failed to exhaust an administrative remedy that was available to him."  *Id.*

In light of that holding, this Court concludes that Plaintiff was aware of the availability of requesting permission to file an out-of-time grievance once he was transferred away from Graceville.  That procedure is stated within the Department's rules, prisoners are given instructions about the rules and, therefore, this is an "available remedy," even if it is not mandated, and even if Plaintiff subjectively believes it will not be effective. Plaintiff must have sought to submit an out-of-time grievance concerning his claims against GEO to exhaust administrative remedies.

GEO's composite exhibit demonstrates that Plaintiff filed numerous grievances between July 6, 2018, and December 31, 2019, but none address the failure to protect him or properly search inmates for contraband.  ECF No. 40, Ex. A.  Plaintiff argues that one grievance

referenced the attack and said he had been "hit with a blunt object."

Plaintiff points out that within that grievance he complained that prison

officials had a duty to provide reasonably adequate "personal safety."  ECF

No. 43 at 9 (citing to Ex. A, p. 5).  Thus, Plaintiff contends that grievance

shows exhaustion and precludes granting the motion to dismiss.

Plaintiff's grievance was submitted on October 6, 2018, and did,

indeed, mention that Plaintiff was "hit with a blunt object" on July 6, 2018.

ECF No. 40, Ex. A at 5.  Plaintiff said his medical records would show he

accessed sick call twice and he complained he was in "constant pain."  *Id.*

The essence of the complaint, however, is that officials must provide

"reasonably adequate food, clothing, shelter, sanitation, medical care, and

personal safety so as to avoid the imposition of cruel and unusual

punishment."  *Id.*  He said that deliberate indifference was "knowledge of

the need for care and the intentional refusal to provide that care."  *Id.*  He

also said that delaying treatment was "more than [an] adequate foundation

for a finding of deliberate indifference."  *Id.*  Plaintiff concluded by saying he

had delayed care, insufficient treatment, could not hear out of his left ear,

he got dizzy, and he loses his balance.  *Id.*  That grievance does not raise

a specific issue as to the failure to properly search inmates or provide

protection from inmate-on-inmate assault.  It is about medical care only and does not show exhaustion of his claims against GEO.

Plaintiff's remaining argument[9] is that Plaintiff's sworn statement demonstrates the unavailability of administrative remedies or, at the very least, presents a dispute about exhaustion which precludes granting the motion to dismiss.  ECF No. 43 at 6; ECF No. 43-1.  First, Plaintiff's evidence that grievances were unavailable to him at Graceville is accepted and not disputed.  *See* ECF No. 43-1 at 6.  He has shown that officers thwarted his ability to file grievances at that institution.  *Id.* at 6-7.

Second, Plaintiff's sworn statement acknowledges that after being moved to Hamilton C.I., he "filed at least 15 grievances" and "about 20 requests trying to get my medical records."  *Id.* at 8.  Plaintiff specifically declared that he filed a grievance about "the denial of medical care."  *Id.* at 8-9.  He said he filed grievances about "the lack of care that" he received at GEO and "the injury" he sustained.  *Id.* at 11.  In response to being asked

---

[9] To the degree Plaintiff claims that Defendants have not indisputably shown that Plaintiff did not file more grievances than have been submitted, *see* ECF No. 43 at 5-6, that argument is rejected.  Plaintiff's speculation that offices have filing errors and incomplete files is not supported by evidence.  ECF No. 43 at 6.  Plaintiff has not shown that Defendants' logs and files are incorrect by pointing to a specific grievance Plaintiff contends that he submitted which has not been included.

Case No. 4:22cv396-WS-MAF

whether he filed "grievances for everything that we've claimed that they did wrong at GEO in this lawsuit," Plaintiff said "yes."  *Id.* at 11.  However, the Court concludes that such a vague generalization is insufficient to show a dispute of fact that Plaintiff specifically exhausted his claim that GEO failed to conduct a proper search of inmates and failed to properly supervise inmates so as to prevent harm to other inmates.  Accordingly, GEO's motion to dismiss should be granted because Plaintiff did not exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a).

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendant GEO, ECF No. 36, be **GRANTED**, and Counts II and IV of Plaintiff's amended complaint, ECF No. 17, should be **DISMISSED** for failure to exhaust administrative remedies.

**IN CHAMBERS** at Tallahassee, Florida, on September 1, 2023.


 S/     Martin A. Fitzpatrick                    
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**