**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JUAN HERNANDEZ,**

      **Plaintiff,**

**vs.**                        **Case No. 4:22cv396-WS-MAF**

**THE GEO GROUP, INC.,
FLORIDA DEPARTMENT OF
CORRECTIONS,
CENTURION, LLC,
and WELLPATH, LLC,**

      **Defendants.**
**_____/**

## FOURTH REPORT AND RECOMMENDATION

In November 2022, Defendants GEO Group, Inc., [hereinafter "GEO"] and the Florida Department of Corrections removed this case from state court. ECF No. 1. On December 16, 2022, Plaintiff filed a first amended complaint. ECF No. 17. Thereafter, four separate motions to dismiss were filed. ECF Nos. 25, 36-38. This Report and Recommendation addresses the fourth and final motion to dismiss filed by Defendant Centurion LLC, ECF No. 37. Plaintiff has filed a response in opposition, ECF No. 45, and the motion is ready for a ruling.

**Amended Complaint**

Plaintiff is a state prisoner who was housed at the Graceville Correctional Facility, and then transferred to other correctional institutions. ECF No. 17 at 2. GEO operated the Graceville facility pursuant to a contract with the Florida Department of Corrections. *Id.*

While housed at Graceville, Plaintiff alleged that he was unable to exhaust administrative remedies because officers at Graceville never provided him with the necessary forms. *Id.* at 3. Plaintiff said that between July 7, 2018, and August 13, 2018, he "attempted to obtain the proper papers/forms to file grievances . . . but he was repeatedly told" by officers that "they did not have the papers but would get them for him." *Id.* "They never did." *Id.* After being transferred to Hamilton C.I., Plaintiff alleged that he filed at least 15 grievances "and exhausted his administrative remedies under the PLRA or was thwarted in doing so." *Id.* at 4.

On July 7, 2018, while incarcerated at Graceville Correctional Facility, Plaintiff was attacked by another inmate who struck him from behind on the back of his head. *Id.* at 3, 5. Plaintiff contends he was injured "because GEO failed to protect" him by "not effectively conducting inmate pat downs to search inmates for contraband . . . ." *Id.* at 5.

Case No. 4:22cv396-WS-MAF

Plaintiff began bleeding profusely and "was so disoriented from the blow that he had to be wheeled to the medical unit for treatment."  *Id.* at 5. Plaintiff was examined by a nurse in Graceville's medical unit, and then transported to the emergency room at Jackson Memorial Hospital for treatment.  *Id.*  Plaintiff had an MRI, 17 staples to close the head wound, and was returned to Graceville.  *Id.* at 6.  He spent the night in the medical unit, and was sent to confinement the next day.  *Id.*

Eleven days later, Plaintiff submitted a sick call request because of continuing problems with his wound and left ear.  ECF No. 17 at 6.  Plaintiff said he had significant pain in his left ear, with hearing loss.  *Id.*  Plaintiff was examined by Dr. Alvarez who told him his "ear was just clogged with dry blood and it was 'nothing serious.'"  *Id.*  Beyond giving him nasal spray, Plaintiff alleged that no other care was provided, including pain medication, even though Plaintiff suffered "daily from severe pain and hearing loss in his left ear."  *Id.* at 6-7.  Dr. Alvarez did not refer Plaintiff to a specialist but advised Plaintiff he would have a follow up in one month.  *Id.* at 6.  The complaint suggests that Plaintiff was not given follow up care.  *Id.*

Plaintiff was transferred to the Reception and Medical Center [RMC] on August 13, 2018.  ECF No. 17 at 7.  He remained there for

approximately two weeks before being transferred to Hamilton Correctional

Institution on or about August 24, 2018.  ECF No. 17 at 7.  Thereafter,

Plaintiff's medical care was managed by the Department of Corrections

and Centurion.  *Id.*

Plaintiff continued to experience problems and complained to

Centurion staff "about the pain and constant ringing sound he was

experiencing in his left ear."  *Id.* at 7.  He also had "frequent panic attacks."

*Id.*   Plaintiff said that his symptoms worsened while at Hamilton C.I. and he

began "losing is hearing in his left ear."  *Id.* at 8.  "He also began to lose his

balance, was dizzy and falling down and had vertigo."  *Id.*  Plaintiff alleges

that he "begged for help" for years for those problems, and requested a

cane to help with walking.  *Id.*  It took two years to receive a cane, but

Plaintiff is still awaiting a hearing aid.  *Id.*

Between August 2018 and early 2022, Plaintiff was seen by

Centurion nursing staff and APRNs, but they provided "prophylactic

measures" only.  ECF No. 17 at 8.  Plaintiff contends he was not properly

assessed by the nurses, and their independent decisions went unreviewed.

*Id.* at 8-9.  He alleges that "a custom and practice existed such that the

nurses who were responsible for the medical care and treatment of Plaintiff

were authorized to function without any supervision or review at all." *Id.* at 9. Plaintiff claims a policy existed which permitted the nurses to work "without supervision or review at all." *Id.* Thus, Plaintiff contends the nurses were "final policymakers regarding the medical care and treatment that Plaintiff received." *Id.*

Between October 6, 2018, and March 8, 2021, Plaintiff submitted at least 21 inmate requests for medical care. *Id.* at 10. He repeatedly complained about ringing in his ears, hearing loss, dizzines, and pain. *Id.* at 10-11. Plaintiff was eventually evaluated by an Ear, Nose and Throat (ENT) physician, Dr. Iman Naseri, on three occasions - December 3, 2018, May 6, 2019, and October 7, 2019. *Id.* at 11. Plaintiff contends that he, too, was "delegated final policymaking authority without any meaningful review . . . ." *Id.* at 9. Dr. Naseri determined that Plaintiff lost hearing in his left ear because of a lack of medical care. *Id.* at 11-12. Had surgery been performed after his injury, "Plaintiff's hearing may have been restored/ saved . . . ." *Id.* at 12.

Dr. Naseri prescribed Plaintiff a hearing aid and medication. ECF No. 17 at 11. As of December 2022 when the amended complaint was filed, Plaintiff had "not received the hearing aid" and said the pain medication

was not effective.  *Id.* at 11.  Plaintiff has had no additional appointments with Dr. Naseri or another ENT since October 2020.  *Id.* at 12.

Plaintiff contends Centurion ignored Plaintiff's medical needs for years.  *Id.*  It took more than two years for Plaintiff to be given a cane to prevent him from falling.  *Id.*  A hearing aid was prescribed, but not provided.  *Id.* at 13.

The amended complaint raised a total of five claims: (1) Count I is an Eighth Amendment claim against Defendant Centurion; (2) Count II is a common law negligence claim against Defendant GEO; (3) Count III is an ADA claim against the Department of Corrections; (4) Count IV is an Eighth Amendment claim against Defendant GEO; and (5) Count V is an Eighth Amendment claim against Wellpath.  *Id.* at 14-26.  As relief, Plaintiff seeks equitable relief, monetary damages, and a permanent injunction.  *Id.* at 27.

**Motion to Dismiss**

Centurion's motion to dismiss presents three arguments in support of dismissal.  ECF No. 37.  First, Centurion argues that the amended complaint fails to state a claim for relief because Plaintiff does not allege that Centurion's policy, custom, or practice was the moving force behind Plaintiff's alleged constitutional violations.  *Id.* at 5-8.  Second, Centurion

contends that the amended complaint does not sufficiently allege specific "conduct that could be considered deliberate indifference against Centurion."  *Id.* at 8.  Third, Centurion argues that Plaintiff failed to exhaust his administrative remedies.  *Id.* at 11-12.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965); *see also* Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557). The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not

a jurisdictional matter."  Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process."  Turner, 541 F.3d at 1082 (citation omitted).  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Id.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  Id.  (citing to Bryant, 530 F.3d at 1373-74).  "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[2]  The burden of proof for evaluating an exhaustion defense rests with the defendant.  Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is

---

[2] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376.

an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

## Exhaustion

The issue of exhaustion has been considered first.  Centurion adopted the arguments set forth in the Department of Corrections' motion to dismiss, ECF No. 7, and GEO's motion to dismiss, ECF No. 8.  ECF No. 37 at 11.

First, those motions became moot when Plaintiff filed the amended complaint.  The Court presumes Centurion intended to adopt the arguments raised in the DOC's motion to dismiss, ECF No. 25, and GEO's motion to dismiss, ECF No. 36.

Notably, a separate Report and Recommendation has already been entered on each of those motions.  *See* ECF Nos. 48, 51.  It has been recommended that both motions to dismiss be granted on the basis of exhaustion.  ECF Nos. 48, 51.  Importantly, Plaintiff's claim against the DOC is an ADA claim, not a deliberate indifference to medical care claim.  Similarly, Plaintiff's claim against GEO is for negligence and failure to protect, also not a medical care claim.

The evidence revealed Plaintiff submitted an appeal to the Secretary complaining that he was not provided with a hearing aid.  ECF No. 48 at 9-10 (citing to ECF No. 25 at 10-11).  The grievance was returned without action for failing to comply with the DOC's grievance process.  *Id.*  It was concluded Plaintiff had not exhausted administrative remedies.  As for GEO, the evidence presented revealed that Plaintiff presented grievances about medical care, but did "not show exhaustion of his claims against GEO."  ECF No. 51 at 21.  Moreover, GEO conceded that Plaintiff exhausted his administrative remedies concerning his medical issues.  *See* ECF No. 36 at 4.

Federal law (the Prison Litigation Reform Act) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory.  Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  Courts lack discretion to waive the exhaustion requirement or provide a continuance of the litigation if a prisoner did not exhaust a claim prior to filing.  Alexander, 159 F.3d at

1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones, 549 U.S. at 204-209, 127 S. Ct. at 914.

A prisoner must comply with the process set forth and established by the State's grievance procedures, *see* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999), as the PLRA requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process."  Turner, 541 F.3d at 1082 (citation omitted).  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  *Id.*  "If, in that light, the

defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.*  (citing to Bryant, 530 F.3d at 1373-74).  "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[3]  The burden of proof for evaluating an exhaustion defense rests with the defendant.  Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

Here, Centurion has not presented any specific facts concerning exhaustion of Plaintiff's claims against Centurion.  Centurion has not met its burden of proving its exhaustion defense.  Plaintiff's amended complaint alleged exhaustion after being transferred away from Graceville, and as

---

[3] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376.

Plaintiff points out, GEO's arguments "cut against this Defendant" and support a finding that Plaintiff exhausted his medical care claims.  *See* ECF No. 45 at 13.  This part of Centurion's motion to dismiss should be rejected.

**Failure to State a Claim**

Centurion argues that Plaintiff has not sufficiently pled a deliberate indifference claim.  ECF No. 37 at 5.  Such a claim may not be based on a theory of respondeat superior.  *Id.* at 5-6.  Rather, Plaintiff "must establish that an official policy or custom . . . was the 'moving force' behind the alleged constitutional deprivation."  *Id.* at 6.

The Eighth Amendment of the United States Constitution requires that prisoners be provided treatment for their serious medical needs. Failing to provide treatment because a defendant is "deliberately indifferent" to a prisoner's plight results in cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  To allege an Eighth Amendment claim for the denial of medical care, a Plaintiff must allege: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v.

<u>Adams</u>, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001);

<u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003).

First, Plaintiff's allegations are sufficient to demonstrate that he had a

serious medical need.  Such a need is defined as "one that has been

diagnosed by a physician as mandating treatment or one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's

attention."  <u>Hill v. Dekalb Regional Youth Det. Ctr.</u>, 40 F.3d 1176, 1187

(11th Cir. 1994), abrogated on other grounds by <u>Hope v. Pelzer</u>, 536 U.S.

730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).  Centurion has not argued

that Plaintiff did not have a serious medical need and that fact is

established.[4]

After showing that he has a serious medical need, Plaintiff "must

prove three facts: (1) subjective knowledge of a risk of serious harm; (2)

disregard of that risk; (3) by conduct that is more than mere negligence."

<u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing <u>McElligott</u>

<u>v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999)).  Medical malpractice does

---

[4] Furthermore, the amended complaint alleged that when the nurse on duty at the institution saw Plaintiff, the nurse "immediately" recommended Plaintiff be taken to the emergency room at Jackson Memorial Hospital.  ECF No. 17 at 5.  It is accepted that Plaintiff sufficiently alleged a serious medical need.

not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at

292.  "Nor does a simple difference in medical opinion between the prison's

medical staff and the inmate as to the latter's diagnosis or course of

treatment support a claim of cruel and unusual punishment."  Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans,

871 F.2d 1030, 1033 (11th Cir. 1989)).  In Estelle, the prisoner received

treatment for his back injury (bed rest, muscle relaxants and pain relievers),

but complained that more should have been done in the way of diagnosis.

The Court rejected that as a basis for liability:

> But the question whether an X-ray--or additional diagnostic
> techniques or forms of treatment--is indicated is a classic
> example of a matter for medical judgment.  A medical decision
> not to order an X-ray, or like measures, does not represent
> cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.

Another principal relevant to Plaintiff's claim against Centurion is that

a healthcare provider's liability cannot be based on "a theory of respondeat

superior or vicarious liability alone."  Est. of Hand by & through Hand v. Fla.

Dep't of Corr., No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6,

2023) (citing Hartley ex rel. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th

Cir. 1999)).  As a private entity, Centurion may be held liable under 42

U.S.C. § 1983 "only under certain circumstances."  <u>Focus on the Family v.</u>
<u>Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1276-77 (11th Cir. 2003)
(cited in <u>Hand</u>, 2023 WL 119426, at *6).  Such circumstances exist when
the entity - Centurion - is alleged to have "caused the violation of [Plaintiff's]
constitutional rights."  <u>Hand</u>, 2023 WL 119426, at *6 (citing <u>Monell v. Dep't</u>
<u>of Soc. Servs. of New York</u>, 436 U.S. 658, 694 (1978)).  "In sum, § 1983
liability against Centurion must be conditioned on the existence of an
official policy or custom that constitutes deliberate indifference."  2023 WL
119426, at *6 (citing to <u>Buckner v. Toro</u>, 116 F.3d 450, 453 (11th Cir. 1997)
("[T]he Monell policy or custom requirement applies in suits against private
entities performing functions traditionally within the exclusive prerogative of
the state, such as the provision of medical care to inmates.").  To the
degree Plaintiff contends that "<u>Monell</u> is inapplicable" and argues that he "is
not attempting to prove liability under <u>Monell</u>," *see* ECF No. 45 at 5, those
assertions must be rejected.

Here, Plaintiff has not pointed to a custom or policy of Centurion and
has not shown that any custom or policy caused a violation of Plaintiff's
Eighth Amendment rights.  Plaintiff has not pointed to a specific policy of
Centurion that amounted to deliberate indifference.  While Plaintiff alleged

that unidentified nurses were final policymakers for Centurion, Plaintiff did not identify any policy which they created.

Instead, Plaintiff alleged that he filed multiple inmate requests for medical care and was seen by medical providers.  Plaintiff's complaints were not ignored because the complaint alleges that Plaintiff had repeated evaluations with multiple nurses, ARNPs, and physicians.  ECF No. 17 at 10-11.  There are no allegations that any policy, custom, or practice of Centurion prevented Plaintiff from receiving medical care.  There are no allegations which show that any medical provider disregarded a risk of harm to Plaintiff.

It is concerning that Plaintiff has not been provided a hearing aid.  Yet no allegations demonstrate that a policy of Centurion prevented Plaintiff's receipt of the hearing aid which was prescribed for him.  For some inexplicable reason, the hearing aid has not been provided, but that failure has not been shown to be attributable to Centurion.  Similarly, the delay in providing Plaintiff with a cane is also concerning, but there is no causal link to that delay and Centurion.

The failure to identify a custom or policy of Centurion is fatal to Plaintiff's claim because Centurion may only be held liable for a custom or

policy that shows deliberate indifference.  <u>Hand</u>, 2023 WL 119426, at *6.

There must be "a persistent and wide-spread practice" rather than "random

acts or isolated incidents" to establish a custom or policy.  2023 WL

119426, at *6.  No such allegations have been presented.  It appears that

Plaintiff's claims are premised on a theory of negligent or insufficient care

provided to Plaintiff by the medical providers at institutions where Plaintiff

was housed.  Because Centurion cannot be held liable under a theory of

respondeat superior, the motion to dismiss should be granted as to Count I

of the amended complaint.

## **RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion to dismiss filed by

Defendant Centurion, ECF No. 37, be **GRANTED**, and Count I of Plaintiff's

amended complaint, ECF No. 17, should be **DISMISSED** for failure to

exhaust administrative remedies.

**IN CHAMBERS** at Tallahassee, Florida, on September 1, 2023.


 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


Case No. 4:22cv396-WS-MAF

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**